UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
ARTHUR DAWSON et al.,               )
                                    )
            Plaintiffs,             )
                                    )
    v.                              )   Civil Action No. 15-2092 (RBW)
                                    )
WASHINGTON METROPOLITAN             )
AREA TRANSIT AUTHORITY,             )
                                    )
            Defendant.              )
_____)

**MEMORANDUM OPINION**

Plaintiffs Arthur Dawson, Ronald Moore, and Gregory Peters initiated this putative class action against the Washington Metropolitan Area Transit Authority, commonly known as WMATA, asserting claims for breach of their employment contracts. See Class Action Complaint ("Compl.") ¶¶ 1–2. Currently pending before the Court is Defendant WMATA's Motion for Summary Judgment ("Def.'s Mot."), in which WMATA asserts that the plaintiffs' claims must fail because no contract exists, which is a prerequisite for establishing the alleged breach. See generally Def.'s Mot. at 1–2. Upon careful consideration of the parties' submissions,[1] the Court concludes that it must grant WMATA's motion.

## I.  BACKGROUND

Between 2012 and 2015, see Compl. ¶¶ 19–20, 40–46, the named plaintiffs were employed by WMATA as supervisors, see id. ¶¶ 12, 14, 16; Answer at 7 ("WMATA ADMITS

---

[1] In addition to the documents already identified, the Court also considered the following submissions in rendering its decision: (1) the Answer of Defendant Washington Metropolitan Area Transit Authority ("Answer"); (2) WMATA's Statement of Material Facts Not in Dispute ("Def.'s Facts"); (3) the Defendant's Points and Authorities in Support of Motion for Summary Judgment ("Def.'s Mem."); (4) the Plaintiffs' Statement of Material Facts in Dispute ("Pls.' Facts"); (5) the Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Opposition to the Defendant's Motion for Summary Judgment ("Pls.' Opp'n"); and (6) Defendant WMATA's Reply to Plaintiffs' Opposition to Summary Judgment Motion ("Def.'s Reply").

that the three named [p]laintiffs are employed at WMATA."); Def.'s Mem. at 4 (stating that the plaintiffs are "non-represented supervisory employees"). The plaintiffs claim that WMATA's Metro Policy/Instruction 7.5.1 (the "Policy"), constitutes a contract mandating that they, "as supervisors, [] be paid at an amount equal to or greater than five percent (5%) of [the p]laintiffs' direct reports," Compl. ¶ 3, and that WMATA has breached the alleged contract by "refus[ing] to pay [the p]laintiffs" according to the 5% differential, see id. ¶ 4.

In relevant part, the Policy states that it is "structured to address base salary adjustments using two distinct approaches: (a) comprehensive salary review and (b) individual salary adjustments." Policy § 5.02. The Complaint places at issue only the comprehensive salary review component of WMATA's salary adjustment approach. See Compl. ¶ 33 (alleging that "after periodic review, [WMATA] is required to make comprehensive supervisor and manager salary adjustments" (emphasis added)). The comprehensive salary review "is [WMATA's] strategic approach to conducting periodic, comprehensive analyses of the salary structure that considers compression, equity, performance, salary ranges[,] and appropriately related comprehensive salary adjustments." Policy § 5.02(a). Pertinent to this dispute, the Policy further states that "[c]ompression occurs when a supervisor or manager experiences less than a five percent (5%) higher pay differential between their salary and that of their highest paid direct reporting subordinate. Compression analyses are performed to monitor pay differentials and detect instances of compression based on annual review and analysis." Id. § 5.02(a)(1)(i).

According to the Policy, "[c]omprehensive salary adjustments are subject to budgetary conditions and approval by the [General Manager/Chief Executive Officer ("General Manager")]. The [General Manager] retains the discretion to modify, change, or expand the salary structure . . . ." Id. § 5.02(a)(3). Moreover, "[f]or fiscal considerations or circumstances

deemed to be in the best interests of [WMATA], the [General Manager] may establish a cap or limitation on general comprehensive salary adjustment amounts." Id. § 5.02(a)(4).

WMATA's answer to the complaint denied that the Policy constitutes a contract. Answer at 7 ("WMATA DENIES the existence of any 'lawful contract governing the terms and conditions of [the p]laintiffs' employment as WMATA supervisors.'" (quoting Compl. ¶ 2)). The Court therefore ordered the parties to conduct discovery on the question of whether a valid and enforceable contract exists, and to file motions for summary judgment on this threshold, dispositive issue. See Order at 1 (Apr. 14, 2016), ECF No. 14.

## II. STANDARD OF REVIEW

In order to grant a motion for summary judgment, Federal Rule of Civil Procedure 56 requires the Court to find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, summary judgment must be granted against a non-movant "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). And, "a dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006) (quoting Anderson, 477 U.S. at 248). The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

In opposing a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec.

3

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Accordingly, the nonmoving party may not rely on "the mere allegations or denials of his pleadings" but "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (internal quotation marks omitted). In ruling on a motion for summary judgment, the court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (internal citations omitted); see also Barnett v. PA Consulting Grp., Inc., 715 F.3d 354, 358 (D.C. Cir. 2013) (stating that weighing the evidence and making credibility determinations "are jury functions, not those of a judge at summary judgment").

## III. ANALYSIS

While the plaintiffs' Complaint advances a single theory of liability, i.e., breach of contract, see Compl. at 15–16, the Court must resolve a threshold question, which is also the sole issue raised by the defendant's motion: whether a contract exists between the plaintiffs and WMATA requiring WMATA to maintain a differential of 5% or more between a supervisor's salary and that of his or her "highest paid direct reporting subordinate," which the Court refers to as the 5% pay differential, see id. ¶ 34. Whether a contract exists is a question of law for the Court to resolve. Kramer Assocs., Inc. v. Ikam, Ltd., 888 A.2d 247, 251 (D.C. 2005). "Under [District of Columbia] law, as is generally true, '[f]or an enforceable contract to exist, there must be both (1) agreement as to all material terms; and (2) intention of the parties to be bound.'" Jack Baker, Inc. v. Office Space Dev. Corp., 664 A.2d 1236, 1238 (D.C. 1995) (second alteration in original) (quoting Georgetown Entm't Corp. v. District of Columbia, 496 A.2d 587, 590 (D.C. 1985)). "[T]he party asserting the existence of a contract has the burden of proof on that issue." Id.

"[F]or a contract to be enforceable, it 'must be sufficiently definite as to its material terms (which include, e.g., subject matter, . . . payment terms, quantity, and duration) that the promises and performance to be rendered by each party are reasonably certain.'" Duffy v. Duffy, 881 A.2d 630, 634 (D.C. 2005) (quoting Affordable Elegance Travel, Inc. v. Worldspan, L.P., 774 A.2d 320, 327 (D.C. 2001)). "If all material terms are addressed . . . and 'the terms of the contract are clear enough for the court to determine whether a breach has occurred and to identify an appropriate remedy, it is enforceable.'" Id. (quoting Affordable Elegance, 774 A.2d at 327). Furthermore, "[i]n evaluating contract formation, [courts] also look closely at the parties' intention to be bound. In order to form a binding agreement, both parties must have the distinct intention to be bound; without such intent, there can be no assent and therefore no contract." Edmund J. Flynn Co. v. LaVay, 431 A.2d 543, 547 (D.C. 1981).

The plaintiffs argue that the Policy represents the parties' agreement that supervisors such as the plaintiffs are entitled to the 5% pay differential following an annual review. See Pls.' Opp'n at 3–4; see also Compl. ¶¶ 66, 95, 115 (alleging that the plaintiffs were not paid at least 5% more than their highest paid direct reports). But, while "[t]he terms of an employer's personnel or policy manual may be sufficient to raise a jury question as to whether the manual creates contractual rights for the employee," Strass v. Kaiser Found. Health Plan of Mid-Atl., 744 A.2d 1000, 1011 (D.C. 2000) (citing Wash. Welfare Ass'n v. Wheeler, 496 A.2d 613, 615 (D.C. 1985), and Nickens v. Labor Agency of Metro. Wash., 600 A.2d 813, 817 (D.C. 1991)), the Court has been unable to find any guidance in District of Columbia and Circuit case law regarding the specific question at issue: whether the Policy constituted a contract to pay a certain amount in compensation. "Rather, the case law in this jurisdiction has been generally limited to addressing the question of whether statements in employee manuals create contractual

5

obligations on the part of an employer when an employee is fired." Rothberg v. Xerox Corp., No. 12-617 (BAH), 2013 WL 12084543, slip op. at *3 (D.D.C. Jan. 4, 2013) (citing Greene v. Howard Univ., 412 F.2d 1128 (D.C. Cir. 1969), and Strass, 744 A.2d at 1000).  The District of Columbia and Circuit cases relied upon by the plaintiffs fall into that category and are thus distinguishable, because those cases concern the question of whether an alleged employment contract converted the parties' relationship from a default at-will employment contract into one that required certain conditions be met prior to the employee's termination.  See Pls.' Opp'n at 9 (citing Strass, 744 A.2d 1000 (wrongful termination dispute); Sisco v. GSA Nat'l Capital Fed. Credit Union, 689 A.2d 52 (D.C. 1997) (same); Rinck v. Ass'n of Reserve City Bankers, 676 A.2d 12 (D.C. 1996) (same); Nickens, 600 A.2d 813 (same); Wash. Welfare Ass'n, 496 A.2d 613 (same); United States ex rel. Yesudian v. Howard Univ., 153 F.3d 731 (D.C. Cir. 1998) (same); see also Rothberg, 2013 WL 12084543, slip op. at *4 (declining to rely on the authorities cited by the parties because "none of [those authorities were] on all fours with the instant case").

Nevertheless, the Court begins its analysis where it must: with the plain language of the Policy.  See Rosenthal v. Nat'l Produce Co., 573 A.2d 365, 369–70 (D.C. 1990) ("[A] court cannot enforce a contract unless it can determine what it is.  It is not enough that the parties think that they have made a contract; they must have expressed their intentions in a manner that is capable of understanding.  It is not even enough that they have actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of that agreement are.  Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract." (quoting 1 A. Corbin, Corbin on Contracts § 95 (1963)); see also Dyer v. Bilaal, 983 A.2d 349, 355 (D.C. 2009) ("'[A] court

6

must honor the intentions of the parties as reflected in the settled usage of the terms they accepted in the contract, and will not torture words to import ambiguity where' there is none." (quoting Bragdon v. Twenty-Five Twelve Assocs. L.P., 856 A.2d 1165, 1170 (D.C. 2004)). Here, upon a review of the Policy, the Court concludes that its clear language demonstrates that it does not create a contract between the plaintiffs and WMATA that mandates the 5% pay differential.

First, the Policy defines "compression" as "an <u>event</u> when the first line supervisor and/or manager experiences less than a 5% higher pay differential between themselves and their highest paid direct reporting subordinate." Policy § 3.09 (emphasis added). The use of the word "event" is significant when viewed in conjunction with the Policy's description of the "comprehensive salary review," which is WMATA's "strategic approach to conducting periodic, comprehensive analyses of the salary structure." <u>Id.</u> § 5.02(a). Notably, this "approach" takes into consideration not only a compression event, but also "equity, performance, salary ranges[,] and appropriately related comprehensive salary adjustments." <u>Id.</u> The Policy thus plainly states that WMATA's comprehensive review "approach" examines several factors, including compression, and that the 5% pay differential acts as a benchmark to determine when a compression event has occurred. Far from constituting a promise by WMATA to maintain a 5% pay differential between supervisors and their highest paid direct reports, this language clearly and merely sets forth the manner in which WMATA conducts comprehensive salary reviews.

Second, and critically, the Policy states that salary adjustments fall within the General Manager's discretion and are "subject to budgetary conditions," <u>id.</u> § 5.02(a)(3), "fiscal considerations," and "circumstances deemed to be in the best interests of" WMATA, <u>id.</u> § 5.02(a)(4). Even assuming the existence of a contract, the plaintiffs' suggested interpretation

7

of the Policy would require WMATA to meet the 5% pay differential obligation even if it were fiscally impossible to do so, which clearly contradicts the Policy's plain language reserving decisions regarding salary adjustments to the General Manager and makes them "subject to budgetary conditions." See 1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc., 485 A.2d 199, 205 (D.C. 1984) ("The writing must be interpreted as a whole, giving a reasonable, lawful, and effective meaning to all its terms."); see also Am. First Inv. Corp. v. Goland, 925 F.2d 1518, 1521 (D.C. Cir. 1991) ("[C]ourts must attempt to harmonize the terms of a contract and read the terms in a way that makes them consistent."). The Court therefore rejects the plaintiffs' positions.

### IV. CONCLUSION

It has long been true that "to form a binding agreement, both parties must have the distinct intention to be bound; without such intent, there can be no assent and therefore no contract." Howard Univ. v. Lacy, 828 A.2d 733, 737 (D.C. 2003) (emphasis added) (quoting Edmund J. Flynn Co., 431 A.2d at 547). For the reasons set forth above, the Court concludes that the plaintiffs have failed to carry their burden to establish that a valid and enforceable contract was created between them and WMATA, because the Policy does not show that WMATA intended to be bound by the 5% pay differential as the plaintiffs claim.[2] The Court must therefore grant WMATA's motion for summary judgment.[3]

**SO ORDERED** this 23rd day of June, 2017.

REGGIE B. WALTON
United States District Judge

---

[2] Because the Court concludes that a valid and enforceable contract does not exist between the parties, the Court does not reach WMATA's other arguments in favor of summary judgment.

[3] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.

8